UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA J. PINNELL,

    Plaintiff,

v.                                                    Case No. 1:20-cv-727
                                                          Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB).

On September 5, 2017, plaintiff protectively filed an application for DIB alleging a disability onset date of September 21, 2016. PageID.59. Plaintiff identified her disabling conditions as: multiple sclerosis (MS); Vitamin D deficiency; restless leg syndrome (RLS); hypersomnia; obstructive sleep apnea (OSA); degenerative disc disease; gastroesophageal reflux disease (GERD); chronic nausea; depression; and loss of consciousness. PageID.224. Prior to applying for DIB, plaintiff completed the 12th grade and had past relevant work as a receiving clerk, video store manager, and cake decorator. PageID.69. An Administrative Law Judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on May 13, 2019. PageID.59-71. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I.    LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

3

## II.   ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of September 21, 2016, and met the insured status requirements of the Social Security Act through September 30, 2019. PageID.62. At the second step, the ALJ found that plaintiff had the following severe impairments: MS; status post January 2013 left ankle hardware removal; L5-S1 disc herniation with kyphosis; cervical and thoracic disc disease; obesity; depression; sleep apnea; status post fusion of the first, second, and third tarsomentatarsels; RLS; and GERD. PageID.62. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant requires the use of a handheld assistive device for ambulation of distances longer than one block and can carry small items in the contralateral upper extremity. She can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch and crawl. She can never climb ladders, ropes or scaffolds. She can frequently handle and finger bilaterally. She can never work around hazards, such as unprotected heights, or unguarded or unprotected moving mechanical parts. She can work indoors only. She can understand, remember, and carry out simple instructions and make simple work-related decisions, but cannot work at a production rate pace. She can tolerate occasional changes in the work setting, and can frequently interact with supervisors, coworkers, and the general public. She would be off-task ten percent of the workday.

PageID.64. The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.69.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level. PageID.70-71. Specifically, the ALJ found that

4

plaintiff could perform the requirements of occupations in the national economy such as bench assembler (110,000 jobs), inserter (90,000 jobs), and parts checker (75,000 jobs). PageID.71. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from September 21, 2016 (the alleged onset date) through May 13, 2019 (the date of the decision). PageID.71.

### III. DISCUSSION

Plaintiff submitted three statements of error on appeal.[1]

**A. The ALJ committed reversible error by failing to assign proper credibility to the opinion of plaintiff's treating physicians and by failing to find that plaintiff met Medical Listing 11.09.**

This statement contains two claims.

#### 1. Treating physician

Plaintiff filed her application on September 5, 2017. Plaintiff appears to contend that her claim should have been decided under the "treating physician rule". *See* Plaintiff's Brief (ECF No. 21, PageID.528) ("[w]hen Plaintiff applied for benefits, the treating physician rule allegedly had been eliminated earlier in the year."). The ALJ did not evaluate her claim under this rule, which applies to opinion evidence for claims filed before March 27, 2017. *See* 20 C.F.R. §

---

[1] Plaintiff raised an additional error in her reply brief. On November 17, 2020, while this case was pending, plaintiff filed another application for DIB. Reply Brief (ECF No. 23, PageID.554, 559). On January 29, 2021, the Social Security Administration (SSA) entered a Notice of Award, finding plaintiff disabled as of May 14, 2019. PageID.559. Plaintiff speculates that this award of benefits "has confirmed that the ALJ's decision was not supported by substantial evidence." Reply Brief at PageID.554. In his sur-reply brief, defendant provided a copy of the SSA's disability determination explanation. *See* Sur-reply (ECF No. 28). There is no basis for the Court to consider this Notice of Award, which was generated more than 1½ years after the ALJ entered his decision in this case, involved a different application for benefits, and used a different medical-vocational guideline to serve as the framework for decisionmaking (*i.e.*, the ALJ in the present case considered plaintiff to be a younger individual, age 46-49 (Rule 201.21), while the SSA in the later application considered plaintiff to be a person approaching advanced age (50-54) (Rule 201.14)).

404.1527(c)(2).[2]  For claims filed on or after March 27, 2017, such as plaintiff's, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record."  20 C.F.R. § 404.1520c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  *See* 20 C.F.R. § 404.1520c(c)(1)-(5).  Here, the ALJ addressed plaintiff's claim under the appropriate standard.  PageID.64.  Other than citing 20 C.F.R. § 1520c, plaintiff does not address how the ALJ failed to apply the relevant standard in this case.  Accordingly, plaintiff's claim of error is denied.

### 2. Listing 11.09

At step three, the ALJ found that plaintiff did not meet the following listed impairments: 1.04 (disorders of the spine); 11.04 (vascular insult to the brain); 11.09 (multiple sclerosis); and 11.14 (peripheral neuropathy).  PageID.62-64.  Plaintiff contends that the ALJ erred by failing to find that she met the requirements for multiple sclerosis in Listing 11.09.  A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation.  *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987).  In order to be considered disabled under the Listing of Impairments, "a claimant must

---

[2] 20 C.F.R. § 404.1527(c)(2) provides in pertinent part, "Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id*. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987) (a claimant does not satisfy a particular listing unless all of the requirements of the listing are present).

"When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir 2004).

> For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

The specific requirements for Listing 11.09 are as follows[3]:

**11.09 Multiple sclerosis, characterized by A or B:**

> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or,

> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following: 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or 2. Interacting with others (see 11.00G3b(ii)); or 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or 4. Adapting or managing oneself (see 11.00Gb3(iv)).

---

[3] Neither plaintiff nor defendant provided the Court with all of the requirements of Listing 11.09.

Plaintiff relies on a form entitled "Listing 11.09 Multiple Sclerosis" completed by her neurologist, Kelly A. Waters, M.D., on February 6, 2019. *See* Exh. B12F (PageID.509).[4] In this check-box form, Dr. Waters stated that plaintiff met the requirements of paragraph A and paragraph B.3. (a marked limitation in physical functioning and in "concentrating, persisting, or maintaining pace"). *Id*. Dr. Waters did not provide any narrative to support her determinations.

The ALJ did not explicitly address Exh. B12F in evaluating Listing 11.09:

> The claimant does not meet listing 11.09, because although she has a diagnosis of multiple sclerosis, the record lacks evidence of disorganization of motor functioning in two extremities. Further, while she has experienced falls, the physical examination findings do not show extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use of the upper extremities. Further, the record lacks a marked limitation in any of the B criteria as analyzed below. . . .
>
>   . . . To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis. . . .
>
>   With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant stated that she had difficulty with concentration (B3E). During physical treatment in 2018, she presented with mild cognitive deficits (B11F/29). However, consultative examination showed moderate limitations with regard to concentration (B3F). The claimant's testimony indicated some limitations with regard to maintain focus on tasks. Therefore, she has moderate limitation with regard to concentrating, persisting, or maintaining pace.

PageID.62-63.

However, the ALJ did address Exh. B12F in evaluating plaintiff's RFC:

> Kelly A. Water, M.D., opined on December 22, 2016, that the claimant needed a cane for walking, required other ambulatory assistive devices for walking distances longer than one block, and was unable to tolerate standing for prolonged periods of time. She said the claimant experience pain with most daily physical

---

[4] The doctor is sometimes referred to as "Dr. Water."

>activities (B5F). On February 6, 2019, she opined that the claimant had disorganization of motor functioning in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or using the upper extremities. She said the claimant also had marked limitation in concentrating, persisting, or maintaining pace (B12F). The opinion of Dr. Water is somewhat persuasive with regard to her opinion of the need for ambulatory assistive devices. While no treatment record indicated ambulatory findings consistent with the need for an assistive device, the record does show complaints of falls (B10F/10 and B11F/4). Further, the claimant's testimony regarding her need for a wheelchair at family events, has been given some consideration. However, her opinion regarding the criteria of listings is not persuasive because the record does not indicate extreme limitations in two extremities, or marked limitation in any of the B criteria.

PageID.68-69.

Based on this record, the ALJ's decision is supported by substantial evidence. Plaintiff has not demonstrated that her condition constitutes either a "disorganization of motor function" or an "extreme limitation" as those terms are defined in the regulations. *See* Listing 11.00D1 and 11.00D2. Nor has plaintiff established that she meets the paragraph B criteria. As discussed, while Dr. Waters checked the boxes to indicate that plaintiff met Listing 11.09, the doctor did not provide any narrative to explain why plaintiff's condition met the listing. Accordingly, plaintiff's claim of error is denied.

### B.  The ALJ committed reversible error by failing to comport with the applicable law regarding later applications for benefits.

An ALJ found that plaintiff was not disabled in a previous decision dated January 15, 2015. PageID.59. Plaintiff contends that the ALJ failed to provide her with a "fresh look" with respect to her present application for disability as required by *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018). Plaintiff's Brief (ECF No. 21, PageID.531-532). "When an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Earley*, 893 F.3d at 933. In performing this new review, the court cautioned that,

> Fresh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making.

*Id*. at 934.  Plaintiff stated that the two Acquiescence Rulings cited by the ALJ, 98-3(6) and 94-4(6), "no longer appear applicable at least in part" due to *Earley*, and that "[i]f Plaintiff truly did not receive the 'fresh look' required by Earley, then this case should be reversed on this ground as well."  Plaintiff's Brief at PageID.532.

Plaintiff has not identified how the *Earley* decision affected the application of the two Acquiescence Rulings in this case.  Contrary to plaintiff's suggestion, the ALJ gave the medical evidence a fresh review.  In evaluating plaintiff's residual functional capacity (RFC), the ALJ found that the record contained new and material evidence related to her RFC since January 15, 2015.  PageID.59, 64-69.  The ALJ reviewed this new evidence to develop the new and more restrictive RFC[5] and to determine that plaintiff did not have the RFC to perform her past relevant work.  As discussed, based on the new RFC, the ALJ found that plaintiff had the capacity to perform 275,000 jobs in the national economy.  Accordingly, plaintiff's claim of error is denied.

> **C.  The ALJ committed reversible error by relying upon impermissible boilerplate language to justify her decision without properly considering the plaintiff's testimony and thus failing to properly evaluate her credibility.**

As an initial matter, plaintiff's reference to credibility is not relevant.  The term "credibility" is no longer used in the agency's terminology.  *See* SSR 16-3p, 2016 WL 1119029

---

[5] The Court notes that plaintiff's 2015 RFC (PageID.108) included few limitations:

"After careful consideration of the entire record, the undersigned finds that the claimant retains a maximum residual functional capacity for sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), subject to only occasional stooping, crouching, crawling, kneeling and balancing; only occasional ramps/stairs, no ladders, ropes or scaffolds; and no unprotected heights, heavy equipment or operating machinery."

("[W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term.").

> Plaintiff's objection appears based in part on the ALJ's use of "boilerplate":
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reason explained in this decision" (PageID.65).

Plaintiff's Brief (ECF No. 21, PageID.532). Plaintiff cites *Browning v. Colvin*, 766 F.3d 702, 708 (7th Cir. 2014) for the proposition that the implication in this "pernicious" boilerplate "is that the assessment of the claimant's ability to work preceded and may invalidate the claimant's testimony about his or her ability to work. Actually that testimony is properly an input into a determination of ability to work." *Id*. Plaintiff has not explained how this sentence creates a structural defect so significant that it requires the reversal of the ALJ's decision entered in this case. "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claim of error is denied.

## IV.   CONCLUSION

Accordingly, this matter will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.


Dated:  March 14, 2022                    /s/ Ray Kent
                                          United States Magistrate Judge